# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

     Plaintiff,

v.

MARIO JACOB SAPP,

     Defendant.

Case No. 2:15-CR-00221-KJD-NJK

**ORDER**

Presently before the Court is Defendant's Motion to Suppress Pretrial Identification as a violation of Due Process (#15).  Plaintiff filed a response in opposition (#17).

On July 15, 2015, Defendant was engaged in a verbal dispute with a couple at an apartment complex.  The dispute involved a parking space. During the incident, Defendant allegedly revealed a firearm and shot at the male half of the couple (G.R.), whose girlfriend (C.T.) was also a witness to the event.  The couple retreated to their apartment to call the police.  Upon or prior to police arrival, Defendant retreated to another apartment in the complex and vacated the residence after responding officers "bull horned" him out.

The tenant of the apartment to which Defendant retreated gave verbal consent to search. This consent was recorded on a body camera worn by one of the responding officers.  The recording has been submitted as an exhibit to Plaintiff's Response (#17 Ex. 1).  The ensuing search revealed a .40 caliber firearm that was found in a pot of soup in the kitchen within the apartment searched. The firearm matched the .40 caliber shell casing found outside of the apartment where the shooting took place.  Additionally, pursuant to a search incident to arrest, a .40 caliber round of ammunition was found inside the left pocket of the Defendant's shorts.  Both witnesses subsequently identified Defendant as the shooter during a show-up identification.  Each witness completed a show-up

1   identification form, and each provided a written statement memorializing the incident and their

2   identification of the Defendant as the shooter.

3       Defendant's Motion, which is based on the Due Process Clause of the Fifth Amendment of

4   the United States Constitution involves two issues regarding the show-up identification.  He alleges

5   that the two witnesses were: 1) allowed to talk to each other for a certain length of time before the

6   second witness was presented to identify the suspect; and 2) the witnesses were not shown the

7   "Show-up Witness Instructions" form they completed until *after* the identification had taken place.

8

9       Defendant's Motion was filed after the deadline for pretrial motions and is therefore,

10  untimely.  See FED. R. CRIM. P. 12(c)(3) ("If a party does not meet the deadline for making a Rule

11  12(b)(3) motion, the motion is untimely.") A court may consider the defense, objection, or request if

12  the party shows good cause. Id.  The failure to timely move for suppression waives the right to later

13  assert the illegality of the search or seizure. Id. See also United States v. Vasquez, 858 F.2d 1387,

14  1389 (9th Cir. 1988).

15      The Court notes Defendant's "unwavering" demands regarding his right to a speedy trial,

16  specifically his "insistence that no motions be filed" but that Counsel "insist on a trial at the earliest

17  possible setting." #15 at 9. The Court also notes Defense Counsel's filing of this Motion

18  notwithstanding his client's instructions and will thus address the merits of the present Motion.

19  I. Legal Standard

20      The Court may exclude identification evidence on due process grounds where it is

21  impermissibly suggestive and unreliable. Manson v. Brathwaite, 432 U.S. 98 (1977). See also United

22  States v. Montgomery, 150 F.3d 983, 992 (9th Cir.1998), citing Neil v. Biggers, 409 U.S. 188

23  (1972). The admissibility of identification evidence is governed by a two-step analysis. The first step

24  is to determine whether the identification procedure was impermissibly suggestive. If the court finds

25  that a challenged procedure is not impermissibly suggestive, the inquiry into the due process claim

26  ends. If the court finds the procedure impermissibly suggestive, automatic exclusion of the evidence

1    is not required. The court, instead, considers whether under the totality of the circumstances the

2    identification is sufficiently reliable that it may be admitted even though it was made pursuant to an

3    unnecessarily suggestive procedure. United States v. Bagley, 772 F.2d 482, 492 (9th Cir.1985), citing

4    Manson v. Brathwaite, supra, and Neil v. Biggers, 409 U.S. 188 (1972).

5         Examples of impermissibly suggestive procedures described in United States Supreme Court

6    cases are distinguishable from the instant case. In Foster v. California, 394 U.S. 440, 443 (1968), the

7    Court found a pretrial identification procedure violative of due process when, "[i]n effect, the police

8    repeatedly said to the witness, 'This is the man.'" The accused had been presented to the witness in

9    one lineup with two much shorter men, again in a one-to-one confrontation, and a third time in

10   another lineup.  Not until the third viewing was the witness able to make a positive identification.

11        In United States v. Wade, 388 U.S. 218, 233 (1967), the Court gave further examples of

12   impermissibly suggestive lineup procedures, such as presenting a lineup in which all participants

13   except the suspect are known to the witness, or are grossly dissimilar in appearance or clothing, or in

14   which the suspect is pointed out before or during the lineup.

15        In determining whether the identification is sufficiently reliable, the court considers the

16   following factors: (1) the opportunity of the victim to view the criminal at the time of the crime; (2)

17   the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4)

18   the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time

19   between the crime and the confrontation. Bagley, 772 F.2d at 492.

20   II. Analysis

21        Defendant was presented before G.R. as the third of three potential suspects.  The responding

22   officer's body camera footage reveals G.R.'s affirmative identification of the Defendant as he was

23   presented in front of a police spotlight at the scene of the incident.  The footage also reveals audio of

24   the officer sitting next to G.R. in the front of the police cruiser stating that G.R. began filling out the

25   show-up form prior to the show-up identification.  Additionally, the potential suspects were

26   presented before G.R. at a distance of about 20 feet from the police cruiser he was sitting in at the

1   time.  Further, pursuant to the body camera  footage, at least five minutes passed between G.R.'s

2   identification and C.T.'s identification.  During this time it is not clear, from the footage, whether the

3   witnesses had an opportunity to collude regarding G.R.'s identification.  Although the evidence

4   presented regarding the show-up identification does not fall within the purview of the prior examples

5   of impermissibly suggestive lineups, the Court will apply the Bagley factors to the evidence

6   presented.

7          Even if the procedure had been unnecessarily suggestive, the evidence regarding the

8   identification of Defendant had sufficient indicia of reliability, measured by the criteria set forth in

9   Bagley.  For example,  G.R. had time to view Defendant at the time of the crime.  G.R. was engaged

10  in a verbal dispute with Defendant which led to the shooting.  It is arguable whether C.T. was present

11  during the shooting (some reports indicate that she was moving her car), although she was present

12  prior to and after the verbal dispute between Defendant and G.R., and thus able to view Defendant.

13  As a result, it stands to reason that both witnesses paid a high degree of attention due to the

14  confrontation between the three of them. This confrontation lasted long enough for the witnesses to

15  provide a verbal description of the shooter prior to the show-ups noting that the shooter was wearing

16  "shorts, [a] baseball cap, glasses and had a goatee." #17 at 5.  Both witnesses exhibited certainty

17  about their identifications, which occurred approximately an hour after the incident.[1]  For instance,

18  immediately after identifying the Defendant, G.R. stated that he was 100% sure of his identification

19  and that he would "bet his baby's mama on it." C.T., meanwhile, indicated that she was "one

20  thousand percent sure," that the Defendant was the person who shot at G.R.

21  ///

22  ///

23

24

25  ───────────────

26         [1] As noted by the Defendant's Motion, the "call came in" around 12:49 a.m.; the show-up
    forms were completed at 1:56 a.m. and 2:06 a.m. by G.R. and C.T. respectively.

III. Conclusion

As a result, the Court finds that the show-up identifications conducted in this case were not unduly suggestive as a matter of law.  Further, the identifications were reliable under the factors enumerated by Supreme Court precedent.

Accordingly, **IT IS SO ORDERED** that Defendant's Motion to Suppress Pretrial Identification as a violation of Due Process (#15) is **DENIED**.

DATED this 13th day of January 2016.

_____
Kent J. Dawson
United States District Judge